**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bryan S. COUCH, Defendant–Appellant.**

No. 93–3304.

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1994.

Decided July 6, 1994.

Matthew L. Jacobs (argued), Paul Kanter, Asst. U.S. Attys., Office of the U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

Catherine M. Canright (argued), Milwaukee, WI, for defendant-appellant.

Before MANION, and ROVNER, Circuit Judges, and PLUNKETT, District Judge.*

* The Honorable Paul E. Plunkett, District Judge, United States District Court for the Northern District of Illinois, is sitting by designation.

PLUNKETT, District Judge.

On February 17, 1993, the grand jury indicted Bryan Couch and three others for conspiracy to manufacture and possess with intent to distribute methcathinone, a Schedule I controlled substance. *See* 21 U.S.C. §§ 846, 841(a)(1); 18 U.S.C. § 2; 21 C.F.R. § 1308.11(g)(3). The conspiracy charged in the indictment was alleged to have occurred "between on or about" April 22, 1992 and January 7, 1993. Couch was convicted by the jury and sentenced to 70 months incarceration, three years supervised release, and fined 1,000 dollars.

Couch appeals, arguing that his conviction violates the ex post facto clause of the Constitution. U.S. Const. art. 1, § 9, cl. 3. That argument rests on the fact that methcathinone did not appear as a Schedule I controlled substance until May 1, 1992, some eight days after the date the indictment charged was the beginning of the conspiracy to manufacture the drug.

### Facts

On January 7, 1993, a deputy sheriff stopped a car driven by Quinn Youngberg for a traffic offense. During a consensual search, the deputy found a variety of drug paraphernalia and white vials containing methcathinone, a controlled substance. The deputy also found four UPS delivery notices for packages from Nationwide Purveyors, an envelope containing 300 dollars with the words "for Rock, Ken or Quinn" written on it, and an invoice for 40,000 ephedrine tablets from Nationwide Purveyors. Nationwide is the primary source of ephedrine, a necessary precursor to the production of methcathinone, to clandestine producers of the drug.

The deputy arrested Youngberg. Youngberg admitted making methcathinone for several years and that he had just received 300 dollars from Bryan Couch to pay for a shipment of ephedrine to make more. Youngberg told police that he and Couch were making methcathinone in the basement

of his residence in Green Bay, and consented to a search of the home.

During the search, police found methcathinone and a fully equipped laboratory designed for production of methcathinone. They also found Kenneth Cattani, who admitted his part in the conspiracy, and Donald Rock Hooper, a guest at the home. Cattani told police he had assisted Youngberg and Couch in producing methcathinone, which was made for personal use and for sale to third parties.

In a subsequent interview, Cattani told police that he and Couch had learned to make methcathinone from a Douglas Hooper in 1990 and that they had produced the drug since then in various locales in Michigan and Wisconsin. Youngberg corroborated that information and added that he ordered the ephedrine from Nationwide Purveyors and had it shipped by UPS to friends via arrangements made on occasion by Couch. Youngberg also told police that prior to his arrest in January 1993, he had gone to Couch's grandfather's residence to pick up 300 dollars that had been left there for him by Couch to pay for a shipment of ephedrine.

At trial, Youngberg and Cattani testified against Couch. In addition, the evidence showed that Couch purchased fifteen gallons of toluene, a necessary precursor to the production of methcathinone, on April 22, 1992, and that a shipment from Nationwide Purveyors was received at Couch's grandfather's farm on April 29, 1992. Couch's grandfather testified that Couch had given him 300 dollars on January 6, 1993, with instructions to give it to Rock, Ken, or Quinn and that he gave the envelope to Quinn Youngberg that evening.

The superseding indictment charged that "between on or about April 22, 1992 and January 7, 1993," Youngberg, Cattani, Couch, and Hooper conspired to manufacture and possess with intent to distribute methcathinone, a Schedule I controlled substance.

See 21 U.S.C. §§ 846, 841(a)(1); 18 U.S.C. § 2. Section 841(a)(1) provides that:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

21 U.S.C. § 841(a)(1).

■ However, methcathinone did not become a Schedule I controlled substance until May 1, 1992. Ergo, Couch argues, his prosecution for conspiracy to produce and possess methcathinone, which was not a Schedule I controlled substance when the conspiracy began, violates the ex post facto clause. We disagree.

### I. *The Ex Post Facto Clause*

■ The ex post facto clause of the United States Constitution prohibits the retrospective application of criminal laws [1] that prejudice a defendant. *See* U.S. Const., Art. I, § 9, cl. 3; Art. 1, § 10, cl. 1 (prohibition against states enacting ex post facto laws). The Supreme Court has fashioned a three-pronged test for determining whether legislation violates the ex post facto clause. First, the legislation must be penal or criminal in nature. *See Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718–19, 111 L.Ed.2d 30 (1990); *Harisiades v. Shaughnessy*, 342 U.S. 580, 594–95, 72 S.Ct. 512, 521–22, 96 L.Ed. 586 (1952). Second, the legislation must be retrospective. *See Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987). Third, the legislation must "disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)).

■ The ex post facto clause allows individuals to rely on existing law regarding criminal conduct and prevents retrospective punishment for crimes committed before any changes in the law. *E.g., Weaver*, 450 U.S.

---

1. Although the phrase literally means "after the fact," it is clear that the clause applies only to penal statutes which prejudice a defendant. *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990) ("It has been long recognized by this Court that the Constitutional prohibition of ex post facto laws applies only to penal statutes which disadvantage the offender affected by them."); *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798).

at 28–29, 101 S.Ct. at 963–64; *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 396, 1 L.Ed. 648 (1798) (Paterson, J.). In *Calder,* Justice Chase explained that the ex post facto clause was included by the Framers to assure that federal and state legislators were restrained from arbitrary or vindictive action. *See Calder,* 3 U.S. at 389.[2]

In the present case, the indictment charged Couch with a conspiracy to produce and possess with intent to distribute methcathinone, "a Schedule I controlled substance," "between on or about April 22, 1992 and January 7, 1993." Couch argues that because Methcathinone was not a Schedule I controlled substance until May 1, 1992, and because the conspiracy as charged in the indictment began prior to that date, his conduct was not illegal, and he may not be prosecuted under § 841(a)(1) without offending the ex post facto clause.[3]

■■■ Mr. Couch's argument cannot carry the day. The purpose of the ex post facto clause, among other things, is to prohibit a law that criminalizes or increases punishment for a crime after its commission. *See Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977) (quoting *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925)). Thus, a defendant may not be charged with a new federal crime if his or her conduct was completed prior to the date that conduct was criminalized. Conspiracy, however, is not a singular, discrete offense that occurs at a point in time and fades into the past. Rather, conspiracy is an ongoing course of criminal conduct that may continue for a significant period.

Though the indictment charged, and indeed, some of the evidence showed, conspiratorial conduct prior to May 1, 1992, the conspiracy did not end there.[4] To the contrary, the evidence showed that the conspiracy, and Couch's participation in it, continued at least until January 6, 1993, the day before Youngberg was arrested. January 6, 1993, was, of course, well after methcathinone was made a Schedule I controlled substance on May 1, 1992.

Even if that is so, however, the government's theory raises more questions than it answers.

The government relies on *United States v. Hofstatter,* 8 F.3d 316 (6th Cir.1993) for the proposition that prosecutions for violations of sections 841 and 846 based upon methcathinone as a controlled substance analogue are fully consistent with federal law. However, in *Hofstatter,* unlike in the present case, the defendants were charged with intent to manufacture controlled substance analogues, not a Schedule I controlled substance. Thus, while *Hofstatter* may demonstrate that methcathinone is a controlled substance analogue, it begs the question of why Mr. Couch was not charged with a controlled substance analogue in this case if indeed that was the government's theory.

However, no attempt to argue this issue has been made. When asked at oral argument whether this really was a variance or amendment issue, counsel for the Defendant answered in the negative, and continued to rely on the ex post facto clause. Regardless, as we find below that prosecution of Mr. Couch for conspiracy to manufacture and possess with intent to distribute methcathinone, a Schedule I controlled substance, does not offend the ex post facto clause, we need not address this issue.

---

2. Justice Chase's opinion as to which legislative acts implicate the primary concerns of the ex post facto clause was as follows:

1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the commission of the offense, in order to convict the offender.

*Collins,* 497 U.S. at 42, 110 S.Ct. at 2719 (quoting *Calder,* 3 U.S. at 390).

3. The government argues that Mr. Couch's conviction does not violate the ex post facto clause because methcathinone was a controlled substance analogue at all times relevant to this case and is thus treated as a controlled substance under 21 U.S.C. § 813. Though the government cites no evidence in support of this theory, our review of the record indicates that the government is correct that methcathinone is a controlled substance analogue under the definition found in 21 U.S.C. § 802(32)(A). *See* 57 Fed. Reg. 18,824 (1992) (Temporary placement of methcathinone into Schedule I because it has "a chemical structure similar to that of methamphetamine" and produces similar responses).

4. The evidence shows that it did not begin there either, but rather that it had begun some time before April 22, 1992.

"It is well settled that the ex post facto clause is not applicable to offenses which began before the effective date of a statute and continue thereafter." *United States v. Kramer*, 955 F.2d 479, 485 (7th Cir.), *cert. denied sub nom., Fischer v. United States*, —— U.S. ——, 113 S.Ct. 596, 121 L.Ed.2d 533 (1992). *Cf. United States v. Canino*, 949 F.2d 928, 951 (7th Cir.1991) ("As we said in *Pace*, 'a statute increasing the penalty for conspiracy does not violate the ex post facto clause when applied to a conspiracy begun before the increase that continued on after the increase.'" (quoting *United States v. Pace*, 898 F.2d 1218, 1238 (7th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992)); *United States v. Baresh*, 790 F.2d 392, 404 (5th Cir.1986) ("[B]ecause a conspiracy is a continuing crime, a statute increasing the penalty for a conspiracy beginning before the date of enactment but continuing afterwards does not offend the Constitution.") (citation omitted); *United States v. Ferrara*, 458 F.2d 868, 874 (2d Cir.) (conspiracy before and after 1959 amendments to Taft–Hartley Act), *cert. denied*, 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed.2d 343 (1972); *United States v. Binder*, 453 F.2d 805, 808 (2d Cir.1971), *cert. denied*, 407 U.S. 920, 92 S.Ct. 2458, 32 L.Ed.2d 805 (1972); *cf. United States v. Russo*, 442 F.2d 498, 501–02 (2d Cir.1971) (not reaching ex post facto issue because conspiracy clearly extended beyond effective date of statute and evidence of conduct prior to that date was admissible), *cert. denied*, 404 U.S. 1023, 92 S.Ct. 669, 30 L.Ed.2d 673 (1972). Thus, "a statutory change that takes place during the existence of an ongoing conspiracy will subject members of that conspiracy to the provisions of the later enactment." *United States v. Gibbs*, 813 F.2d 596, 602 (3d Cir.), *cert. denied*, 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987) (citing *United States v. Wells Fargo Armored Car Serv. Corp.*, 587 F.2d 782, 782–83 (5th Cir.1979)). *See also United States v. Duke*, 814 F.Supp. 29, 30 (M.D.Tenn.1993) (because bank fraud scheme has same continuing nature as conspiracy, indictment that alleges conduct that occurs in part before criminalization of conduct does not violate ex post facto clause); *United States v. Gressett*, 773 F.Supp. 270, 276 (D.Kan.1991) (same); *United States v. Whitty*, 688 F.Supp. 48, 53 (D.Me.1988) (same); *United States v. Robichaux*, 698 F.Supp. 107, 110 (E.D.La.1988) (same). *But cf. United States v. Brown*, 555 F.2d 407, 418–21 (5th Cir.1977) (conviction for RICO conspiracy that straddled effective date of statute reversed where bulk of proof predated statute and jury was not instructed about effective date of § 1962(d) or that government must demonstrate existence of conspiracy after that date), *cert. denied sub nom., Seymour v. United States*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978).

Couch does not make, and the evidence would not support, the argument that he withdrew from the conspiracy before May 1, 1992. *Cf. Christianson v. United States*, 226 F.2d 646 (8th Cir.1955) (evidence sufficient to show defendant, who had joined conspiracy before act was illegal, continued as a member after effective date of statute rendering act illegal), *cert. denied*, 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859 (1956). Though there is evidence of his involvement prior to May 1, 1992, there is also evidence that shows Couch provided 300 dollars to pay for a shipment of ephedrine tablets as late as January 6, 1993. Thus, he participated in the ongoing conspiracy both before and after the date methcathinone was made a Schedule I controlled substance. Mr. Couch's conviction is

AFFIRMED.