**UNITED STATES of America**

**v.**

**Theodore G. SOURLIS and Elaine Sourlis, Defendants.**

**Criminal Action No. 96–155.**

United States District Court, D. New Jersey.

Dec. 16, 1996.

Richard J. Schechter, Bohdan Vititsky, United States Attorney's Office, Newark, NJ, for U.S.

John J. Barry, Barry & McMoran, Newark, NJ, for Defendant, Theodore Sourlis

Bunce D. Atkinson, Red Bank, NJ, for Defendant, Elaine Sourlis.

## OPINION

HAROLD A. ACKERMAN, District Judge.

On April 25, 1996, the defendants, Theodore G. Sourlis and Elaine Sourlis, were indicted with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 371, and 10 counts of bank fraud in violation of 18 U.S.C. § 1344. On December 11, 1996, this court held a hearing to consider a number of pre-trial motions by both the defendant and the government.

The defendant moves for:

1. an Order dismissing the Indictment in its entirety or, alternatively requiring the government to elect one of three separate loan transactions on which it will proceed, on the grounds that the indictment is duplicitous, it violates the ex post facto clause of the Constitution, and because it violates the requirements for joinder under Rule 8 of the Federal Rules of Criminal Procedure.

2. disclosure of all *Brady* material in the possession of the government;

3. an order that the government produce "a written summary of expert testimony the government intends to use at trial, including a description of the witnesses' opinions, the bases and the reasons therefore, and the witnesses' qualifications" pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure;

4. an order that the court amend its original order that the government pre-mark exhibits and permit defense counsel to inspect and copy these exhibits from thirty days prior to commencement of trial to sixty days;

5. early disclosure of Jencks Act material; and

6. a bill of particulars.

The government moves for reciprocal discovery.

*I. Duplicity*

Defendants have argued that the indictment violates the prohibition against duplicitous pleading. In addition, the defendants have argued that this allegedly duplicitous pleading violates the joinder rules of Rule 8 of the Federal Rules of Criminal Procedure and the protections of the Ex Post Facto Clause as it applies to the United States Sentencing Guidelines.

■ "Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Starks,* 515 F.2d 112, 116 (3d Cir.1975). An indictment with duplicitous counts implicates the following concerns: first, "a general verdict [from a duplicitous indictment] does not reveal exactly which crimes the jury found the defendant

had committed," *United States v. Gomberg,* 715 F.2d 843, 845 (3d Cir.1983), *cert. denied,* 465 U.S. 1078, 104 S.Ct. 1439, 1440, 79 L.Ed.2d 760 (1984); second, a duplicitous indictment may prejudice the defendant "with respect to evidentiary rulings during the trial, since evidence admissible on one offense might be inadmissible on the other," *Starks,* 515 F.2d at 116; and third, in a general verdict based upon two or more separate offenses joined in a single count, there is no way of knowing whether the jury was unanimous with respect to any of the offenses. *Id.* at 117. In order to avoid these problems with duplicity, courts will either dismiss the duplicitous counts of an indictment, or require the government to make an election between charging one, but not all of the offenses.

■ An indictment is not duplicitous in cases where the indictment does not charge different offenses in the same count, but instead charges different methods of completing the same offense. *See, e.g., United States v. Goldberg,* 913 F.Supp. 629, 636 (D.Mass.1996). The Federal Rules of Criminal Procedure specifically authorize charging two different methods of committing a crime in a single count. *See* Fed.R.Crim.P. 7(c)(1) ("It may be alleged in a single count that the means by which the defendant committed the offense are unknown or the defendant committed it by one or more specified means.")

■ When considering whether duplicity exists within an indictment, a court's review is limited because "the task is not to review the evidence . . . to determine whether it would support charging several crimes rather than just one, but rather solely to assess whether the indictment itself can be read to charge only one violation in each count." *United States v. Mastelotto,* 717 F.2d 1238, 1244 (9th Cir.1983). "The question for review is simply whether the indictment may be read to allege a single unified scheme in each count." *Id.*

The indictment in the instant case includes 11 counts. Count 1 alleges that the Sourlises' were involved in a single conspiracy to commit bank fraud with three financial institutions between 1985 and 1989. Counts 2

through 11 charge the defendant with 10 executions of bank fraud in violation of 18 U.S.C. § 1344.

### A. The Indictment

#### 1. Count 1

■ Although the defendants have attacked every count as duplicitous, their claim can be reduced to the assertion that the indictment is fatally flawed because it involves three schemes to defraud rather than one. In support of their motion, defendants have relied upon several cases which discuss the variance doctrine to support their argument. The defendants have not offered any reason and this court has not discovered any case law to suggest that this court should incorporate variance standards into its duplicity review. The variance doctrine compels a court to vacate a conviction where "there is a variance between the indictment and the proof which prejudices some substantial right of the defendant." *U.S. v. Maker*, 751 F.2d 614, 614 (3d Cir.1984). In contrast to the limited form of review under duplicity analysis, a variance analysis requires that a court examine the evidence presented to discern the differences between the indictment and the proofs offered. For example, the indictment in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the seminal variance doctrine case, charged 32 people with one conspiracy where 8 independent groups of people had dealt independently with one agent in a pattern that was analogous to "separate spokes meeting at a common center ... without the rim of the wheel to enclose the spokes." *Kotteakos*, 328 U.S. at 754–55, 66 S.Ct. at 1243. Based upon the evidence, the Court found that the jury "could not possibly have found ... only one conspiracy." *Id.* at 768, 66 S.Ct. at 1249. Essentially, the defendants, at the hearing, warned the court of variance problems that they anticipate will develop at trial. However, now is not the appropriate procedural stage to consider a variance argument because I cannot consider any evidence. Even if this were the right time, this case can be distinguished from *Kotteakos* because in that case, several of the defendants had never had any dealings with each other. Here, the indictment alleges that both defendants were involved in the same conspiracy.

■ In the instant case, Count 1 alleges a conspiracy to defraud three financial institutions. Generally, "[a] conspiracy count may allege a purpose to commit multiple substantive offenses, and it is not duplicitous if it does so," *United States v. Knox Coal Co.*, 347 F.2d 33, 39 (3d Cir.), *cert. denied,* 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965) because "an agreement to commit several crimes is but one conspiracy." *Gomberg*, 715 F.2d at 846. Even if the conspiracy has many objectives, "the conspiracy is the crime ... however diverse its objects." *Gomberg*, 715 F.2d at 846. In the instant case, the indictment can be read to charge only one conspiracy with several objectives which include the defrauding of three financial institutions between 1985 and 1989.

As I have already noted, the defendants draw from variance theory to argue that the indictment is defective because Count 1 alleges three conspiracies. Even if this court were to find variance jurisprudence applicable or at least analogous, the case law would not compel this court to dismiss the indictment. Under Third Circuit case law, the factors for whether a single conspiracy are present are identical to those that determine whether a single scheme exists under a fraud statute. *United States v. Maker*, 751 F.2d 614, 625 n. 35 (3d Cir.1984) (citing *United States v. Camiel*, 689 F.2d 31, 36 (3d Cir. 1982), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985)). The court of appeals has developed the following factors for variance cases to determine whether a single conspiracy exists:

1) whether there existed common or similar goals;

2) whether there existed common or similar methods; and

3) whether there existed an overlapping of participants.

*United States v. Schurr*, 775 F.2d 549, 556 (3d Cir.1985); *United States v. De Peri*, 778 F.2d 963 (3d Cir.1985); *United States v. Maker*, 751 F.2d 614 (3d Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3479, 87

L.Ed.2d 614 (1985). Sometimes, although not always, the court of appeals has considered a fourth factor: whether the agreement or scheme contemplated a continuity in purpose, performance, and result. *United States v. Barr*, 963 F.2d 641, 649 (3d Cir. 1992), *cert. denied*, 506 U.S. 1033, 113 S.Ct. 811, 121 L.Ed.2d 684 (1992); *Maker*, 751 F.2d at 625 n. 36; *but see, Schurr, supra*, (not mentioning this factor). In their brief, the defendants have conceded that Count 1 satisfies the first three factors, Defendants' Br. at 13, but they argue that it fails the fourth factor, characterized by the defendants as the "the crucial test employed by the Third Circuit." *Id.* at 14.

Because the Third Circuit has not always considered this fourth factor necessary, one cannot argue, as the defendants do, that this factor is some kind of litmus test for duplicity. It appears to be but one factor considered by courts in variance cases. Regardless of this factor's importance, I find that the indictment can be read to include continuity in purpose, performance, and result. Because there is no conspicuous discontinuity in the contemplated activity, defendants' argument is flawed as a matter of fact in addition to its deficiency as a matter of law. Therefore, even if the variance theory standards were applicable to this case, the court would not find Count 1 duplicitous.

### 2. Counts 2 through 11

Counts 2 through 11 allege 10 executions of bank fraud in violation of 18 U.S.C. § 1344. In a fraud case, the "central question in a duplicity review of any given count in an indictment ... is ... the breadth of the fraudulent activity alleged in the count, that is, whether it all falls within one unitary 'scheme to defraud,'" *Mastelotto*, 717 F.2d at 1244. Accordingly, if the "set of fraudulent transactions alleged in a [fraud] count is within the conceivable contemplation of a greedy mind, no duplicity has occurred." In the instant case, the defendants do not contest that each count alleges a separate and single transaction. Therefore, the defendants cannot avail themselves of the duplicity doctrine.

Because each count only alleges one execution of bank fraud in violation of 18 U.S.C. § 1344, it cannot be argued that any of the counts in the indictment charge more than "two or more distinct and separate offenses." *United States v. Starks*, 515 F.2d 112, 116 (3d Cir.1975). The indictment does not implicate any of the concerns of the duplicity doctrine that I have discussed. For instance, because each alleged execution of the crime is specifically detailed in Counts 2 through 11, I do not believe that there exists the possibility that a jury could find the defendants guilty on a count without having reached a unanimous verdict on the commission of a particular offense. *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

At the heart of defendants' duplicity claim is their perception that the introduction to Counts 2 through 11 references one "scheme and artifice" set out in Count 1 (the conspiracy count), (Indictment at 13), and thereby, contaminates the ten counts because "it is apparent from the face of the Indictment that ... three schemes are alleged and are duplicitously joined into one." Defendant's Br. at 11. However, for the reasons detailed above, this argument is unpersuasive. Defendants' dissatisfaction with the indictment is not rooted within the realm of duplicity. The defendants have not cited any case law on duplicity and this court has not discovered any that would support their claim. Counts 2 through 11 are not duplicitous because the indictment does not raise the concerns of the duplicity doctrine and each count can be read to charge a separate, single, and distinct offense.

As with the conspiracy count, the defendant has cited several variance cases to argue that the government has alleged more than one unitary scheme. As I have stated, these cases are not pertinent and even if they were, the indictment can be read to allege one unitary scheme.

### B. Joinder

Defendants have argued that the "duplicitous joining of three transactions into a single conspiracy and a single scheme al-

lows the government to circumvent the rules of joinder." Defendants' Br. at 15. Rule 8(b) provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. FED.R.CRIM.P. 8(b).

The indictment, defendant argues, "manifests at best a series of unconnected offenses which cannot be properly joined under Rule 8(b)." *Id.* at 17.

■ In considering defendants' motion, I must note that a misjoinder motion is addressed to the pleadings and not to any proof or evidence. Therefore, "provided that the indictment charges that the offenses joined constitute a single series of acts or transaction, severance will not be required." *United States v. Somers,* 496 F.2d 723, 729 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 57, 42 L.Ed.2d 58 (1974).

■ As the Third Circuit has noted:

> Joinder is permitted of a conspiracy count and substantive counts arising out of the conspiracy, since the claim of conspiracy provides a common link, and demonstrates the existence of a common scheme or plan. Thus, provided that the conspiracy charge is put forward in good faith, the combination of a conspiracy count with counts charging acts in furtherance of the conspiracy will survive attack under Rule 8(b). *Id.*

In the instant case, the indictment charges the defendants with one count of conspiracy to commit bank fraud and with 10 substantive counts which list the alleged executions of bank fraud. Because it appears that the conspiracy charge was put forth in good faith, I find that there has been no violation of Rule 8(b).

### C. Ex Post Facto

■ Next, the defendants argue that the indictment violates the ex post facto clause because Count 1—the conspiracy count—covers transactions that occurred prior to November 1, 1987, the effective date of the United States Sentencing Guidelines. Count 1 covers the following "overt acts": the alleged defrauding of Ocean County National Bank which was completed by September 1985; the alleged defrauding of Statewide Savings and Loan Association which was completed by November 1986; and the alleged defrauding of Amerifederal Saving bank which occurred in 1989. Indictment at 9–12. According to the defendants, the indictment violates the ex post facto clause because the Guidelines impose a mandatory minimum sentence on conduct that occurred before the effective date of the Guidelines.

■ The purpose of the ex post facto clause "is to prohibit a law that criminalizes or increases punishment for a crime after its commission." *United States v. Couch,* 28 F.3d 711, 713 (7th Cir.), *cert. denied,* ── U.S. ──, 115 S.Ct. 495, 130 L.Ed.2d 405 (1994). Moreover, "it is well settled that the ex post facto clause is not applicable to offenses which began before the effective date of a statute and continued thereafter." *Id.* at 715. Therefore, because "[c]onspiracy ... is not a discrete offense that occurs at a point in time and fades in the past," *Id.* at 714, "a statutory change which takes effect during the existence of an ongoing conspiracy will subject members of that conspiracy to the provisions of the later enactment." *United States v. Gibbs,* 813 F.2d 596, 602 (3d Cir.), *cert. denied,* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987); *see also United States v. Duncan,* 42 F.3d 97, 104 (2d Cir.1994) (continuing offenses such as conspiracy and bank fraud do not run afoul of the ex post facto clause if the criminal offenses continue after the relevant statute becomes effective); *Couch, supra,* at 714 (quoting *United States v. Canino,* 949 F.2d 928, 951 (7th Cir.1991) (holding that if a statute increased the penalty for a conspiracy, it would not violate the ex post facto clause "when applied to a conspiracy begun before the increase that continued on after the increase")), *cert. denied,* 504 U.S. 910, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992). Similarly, the guidelines are applicable to a conspiracy conviction where a defendant's participation in the conspiracy continues after November 1, 1987. *See United States v. Rosa,* 891 F.2d 1063, 1068–69 (3d

Cir.1989); *see also United States v. Bertoli,* 40 F.3d 1384, 1401 (3d Cir.1994) (sentencing for conspiracy which occurred between 1983 and 1992 governed by guidelines).

In the instant case, Count 1 alleges that the defendants engaged in a conspiracy that continued until at least 1989 well after the effective date of the guidelines. Accordingly, if the defendants were convicted under Count 1, the Sentencing Guidelines would apply. Thus, the defendants' argument that the indictment violates the ex post facto clause fails.

## II. Brady/Giglio/Agurs

▪ Next, the defendant moves for an order directing the government to disclose any and all exculpatory and/or favorable information within its possession or under its exclusive control. Specifically, the defendants request an order directing the government to produce "documents concerning communications between the Department of Justice, the U.S. Attorney, or the Federal Bureau of Investigation and the Resolution Trust Corporation ("RTC") or Federal Deposit Insurance Corporation ("FDIC") related to the investigation of this action or its preparation for prosecution" along with an order directing the government to "provide the substance of any such communications," and an order directing the "government to identify the date when this case was referred by the RTC to the FBI or U.S. Attorney for criminal prosecution" so that they can prepare their *res judicata* defense. Defendants' Br. at 19–20. In 1995, a bankruptcy court dismissed a complaint against the Sourlises' regarding the Amerifed loans on the defendants' motion for failure to make out a prima facie case for nondischargeability. Defendants' Br. at 20. The defendants also seek discovery of information regarding:

● "documents and other information [which] were in the possession of each of the three financial institutions or their agents, such as appraisers, from the time of the initial application through the time the loans were granted;"

● "information as to the chain of custody to date of the files of each of the three institutions or their agents;" and

● any "information that indicates that these files have been purged, consolidated, compromised, or altered in any way."

Defendants' Br. at 23.

 Under *Brady v. Maryland,* 373 U.S. 83, 83, 83 S.Ct. 1194, 1194, 10 L.Ed.2d 215 (1963), the government must produce to defendants all evidence that is both exculpatory and material. Such evidence may include evidence bearing upon the credibility of a witness. *See Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 2398–99, 49 L.Ed.2d 342 (1976). The government also has a duty "to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley,* 514 U.S. 419, ——, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995). Suppression by the government of evidence "favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment...." *Id.* at ——, 115 S.Ct. at 1565 (1995). Accordingly, constitutional error results from the suppression of favorable and material evidence "if there is a reasonable probability that," the result of the proceeding would be different if the government disclosed the evidence. *Id.* A "reasonable probability" of a different result exists where the suppression of evidence would "undermine confidence in the outcome of the trial." *Id.*

 It has always been my practice and policy that as soon as the government receives *Brady—Giglio—Agurs* material, the government must turn that material over to the defendant. The government must make disclosure at that point when "reasonable probability" is reached. *Id.* Finally, it is important to note that the government should resolve all doubtful questions in favor of disclosure. *Id.* at ——, 115 S.Ct. at 1568.

In their briefs and at the hearing, the government has stated that it is fully aware of its continuing obligation to disclose all exculpatory material under *Brady* and this court's discovery order, and that it has not provided any such material to the defendants because it is not aware of any. The govern-

ment further represents that should any *Brady* material come into its possession, it will disclose it to the defendant. *See* Government Br. at 16.

I remind the government that pursuant to my discovery order, it must disclose *all* material and exculpatory information, including information related to the credibility and impeachment of witnesses *as soon as such material comes into its possession,* rather than one day before the witness in question testifies.

If there is any dispute as to what constitutes disclosable material, the parties should contact the court immediately for quick resolution of the question.

### III. Request by the Defendants for a Summary of Expert Testimony

Next, defendants request that the government produce "a written summary of expert testimony the government intends to use at trial, including a description of the witnesses' opinions, the bases and the reasons therefore, and the witnesses' qualifications" pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure. Defendants' Br. at 25. Rule 16(a)(1)(E) provides that:

> At the defendants' request, the government shall disclose to the defendant a written summary of testimony the government intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. This summary must describe the witnesses' opinions, the bases and the reasons therefore, and the witnesses'. qualifications. FED.R.CRIM.P. 16(a)(1)(E).

At the hearing, the government indicated that at this time, it did not intend to introduce any expert testimony at trial. Therefore, there is nothing for the government to produce. However, if at some time, the government decides to introduce expert testimony, they must comply with the provisions of Rule 16(a)(1)(E).

### IV. Production of Pre–Marked Exhibits

██ The defendants' request that the court amend its order to require the government to premark the exhibits and to permit defense counsel to inspect and copy these exhibits from thirty days prior to commencement of trial to sixty days. Defendants' Br. at 25. The defendants, in their brief, argue that the order should be amended because of the complexity of the case and the large number of documents. *Id.* They further argue that the "government can hardly claim prejudice since it has been preparing this case for more than five years." *Id.* at 26. According to the defendant, there will be "substantial questions regarding ... authenticity, completeness and chain of possession...." *Id.*

In response, the government argues that thirty days is reasonable "under any circumstances," especially in light of the time and resources that Defendants and their teams of lawyers have to date invested in the preparation of their defense and continue to have available to prepare their defense. Government's Br. at 17.

In light of the foregoing arguments made by the parties, I find that it is fair and reasonable to require that the government premark the exhibits and permit defense counsel to inspect and copy these exhibits forty-five days prior to commencement of the trial. Defendants' Br. at 25.

### V. Jencks Act Material

██ Next, defendant moves for disclosure of witness' statements pursuant to the Jencks Act one week before the witness testifies. The Jencks Act reads in pertinent part:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States.which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination. 18 U.S.C. §. 3500.

Defendant nevertheless requests that the court order the government to produce such information one week before the witness testifies given the complexity of the case and "the fact that there is no basis for concern about the safety of the government's witnesses." Defendants' Br. at 26. The Act

does not require such early production of witness statements or reports. *See Palermo v. United States,* 360 U.S. 343, 349, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287 (1959); *United States v. Murphy,* 569 F.2d 771, 773 (3d Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978).

The government has stated, however, that it "agrees to supply Defendants with Jencks Act materials a week in advance of a given witness's testimony if Defendants agree, pursuant to Federal Rule of Criminal Procedure 26.2, to do the same in connection with their witnesses' statements." Government's Br. at 17. At the hearing, the defendants agreed to the government's suggestion. Thus, both the government and the defendants will supply each other with their witnesses' statements, pursuant to *Jencks* and Rule 26.2 one week in advance of the given witness' testimony.

## VI. *Bill of Particulars*

In their brief and Notice of Motion, the defendants request a Bill of Particulars. Defendants' Br. at 26; Notice of Motion, Requests 3(a)–3(e). Specifically, defendant asks that the government be ordered to provide the following in a Bill of Particulars to specify:

1. what scheme to defraud, if any, the Sourlises are alleged to have engaged in other than the scheme to obtain moneys through false representations; Defendants' Br. at 28; Notice of Motion, Requests 3(b), 3(e);

2. what misrepresentations, if any, it alleges the Sourlises engaged in which are not specified in the Indictment; Defendants' Br. at 30; Notice of Motion, Request 3(a);

3. what misrepresentations, if any, the Sourlises are alleged to have committed, affirmatively or through omission, with respect to liens and third-party interests, other than those specified in the Indictment; Defendants' Br. at 30; Notice of Motion, Request 3(c); and

4. what false personal information, if any, the Sourlises are alleged to have provided, and to whom, other than one such misrepresentation specified in the indictment. Defendants' Br. at 31 (cit-

ing Indictment, Count 1, ¶ 20 (alleging that the Sourlises "knowingly supplied, or caused to be supplied, to Amerifederal ... false written information about their personal finances by falsely claiming ownership of automobiles that they in fact were merely leasing")); Defendants' Br. at 30; Notice of Motion, Request 3(d).

Fed.R.Crim.P. 7(f) provides, in relevant part, that "[t]he court may direct the filing of a bill of particulars." Rule 7(f) was amended in 1966 "to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." *United States v. Rosa,* 891 F.2d 1063, 1066 (3d Cir.1989) (quoting Fed. R.Crim.P. 7 advisory committee's note to 1966 amendment).

There are conflicting considerations that a district court should consider in determining whether to grant or deny a bill of particulars. On the defendant's side, bills of particular should be granted "whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *Rosa,* 891 F.2d at 1066. *See also United States v. Addonizio,* 451 F.2d 49, 63–64 (3d Cir.1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972) (purpose of bill of particulars is "to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense."). Countervailing considerations range from the "personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so." *Rosa, supra,* at 1066.

Furthermore, when discovery provided by the government fills in the outline of the indictment, the necessity for a bill of particulars declines. *See United States v. Boffa,* 513 F.Supp. 444, 485 (D.Del.1980). However, "[a] bill of particulars, unlike dis-

covery, is not intended to provide the defendant with the fruits of the government's investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir.1985) (citations omitted). A bill of particulars is intended to give the defendant "only the minimum amount of information necessary to permit the defendant to conduct his *own* investigation." *Id.*

### A. Requests 3(b) and 3(e) for Specific Information on Violations of Section 1344(a)(1)

▮ In making their first request, the defendants, who have been charged under both prongs of 18 U.S.C. § 1344(a), have argued that the indictment is devoid of the "slightest suggestion" that the defendants violated section 1344(a)(1) which prohibits anyone from knowingly executing, or attempting to execute, a scheme or artifice "to defraud a federally chartered or insured financial institution." 18 U.S.C. § 1344(a)(1). The defendants argue that the indictment by referring to allegedly false representations, only informs the defendants of violations of the second prong, 18 U.S.C. § 1344(a)(2), which covers schemes to obtain money through false representations. Defendant's Br. at 27–29. In their brief, defendants rely upon *United States v. Schwartz*, 899 F.2d 243 (3d Cir.), *cert. denied*, 498 U.S. 901, 111 S.Ct. 259, 112 L.Ed.2d 217 (1990), for the proposition that the government must specify how the defendants violated Section 1344(a)(1). In *Schwartz*, the Third Circuit held that a defendant may violate Section 1344(a)(1) without making false or fraudulent representations and may be found to have engaged in bank fraud where defendants' scheme departs from "fundamental honesty, morel uprightness, fair play and candid dealings." *Id.* at 246. However, as the government has noted in its brief, *Schwartz* does not deal with the question of what must be specified in either an indictment or a bill of particulars regarding the conduct which constitutes a scheme to defraud. Government's Br. at 48.

Nevertheless, as the government notes in its brief, the indictment gives notice to the defendants of "acts that constitute a departure from fundamental honesty." Governments' Br. at 48; *see e.g.* Indictment, Count 1, ¶ 10 ("defendants failed ... to inform the financial institutions from which they were seeking loans about the existence of certain liens and interests held by third parties against some of the rental properties that defendants mortgaged and pledged to the financial institutions"). Therefore, there is no need for a bill of particulars to specify in further detail the scheme in which the defendants have engaged to obtain money the Sourlises are alleged to have engaged in other than that to obtain money through false representations. Defendants' Br. at 28. The indictment is specific enough to permit the defendants to conduct their own investigation.

### B. Request 3(a) for Specific Information of "Misrepresentations"

▮ Count 1 of the indictment—the conspiracy count—alleges that *"among* the means and method employed by the defendants ... to carry out the conspiracy are those set forth in paragraphs 6 through 25." Focusing upon the Indictment's use of the word "among," the defendants request that the government detail all of the alleged misrepresentations made by the defendants. However, I find that the indictment is sufficiently detailed and provides the defendants with enough information so that they can conduct their own investigation. Defendants' request is nothing more than that an attempt to use a bill of particulars to engage in "wholesale discovery of the Government's evidence," *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir.1975) (quoting *Addonizio*, 451 F.2d at 64), and therefore, defendants' request for a bill of particulars is inappropriate.

### C. Request 3(c) for Information of Misrepresentations Regarding Liens

▮ Defendants have requested that the government provide information of "what misrepresentations, if any, the Sourlises are alleged to have committed, affirmatively or through omission, with respect to liens and third-party interests, other than those specified in the Indictment." Defendants' Br. at 30. However, as the government has noted, those misrepresentations are already explained in detail in the indictment. Govern-

ment's Br. at 46. In Count 1, ¶ 10 of the indictment indicates that in "two separate cases," the defendants failed to inform financial institutions of the existence of certain liens. The indictment further describes in detail the nature of these failures. Indictment, Count 1, ¶¶ 15–16 (describing one case and naming one property), ¶¶ 24–25 (describing second case and naming property). In addition, the defendants have obtained thorough discovery "documentation surrounding these liens" and the government has indicated that "no other liens are implicated here." Governments' Br. at 46. For those reasons and because a bill of particulars is not intended to serve as a discovery device, defendants' Request 3(c) request is inappropriate.

## D. Request 3(d) for Information Regarding "False Personal Information"

■ In Request 3(d), the defendants seek information of "what false personal information the Defendants submitted or caused to be submitted and to which financial institution, other than that specified in Count 1...." Notice of Motion, Request 3(d). However, the government has indicated that the "false personal information" is explained in the indictment and that the "United States has advised the defense by letter that the false ... information submitted by the Sourlises were [the] 'Statements of Financial Condition' and related compilations for the years 1987 and 1988." Governments' Br. at 46. Moreover, through discovery, the defendants have obtained the "actual documents that [the Government] contends are false." *Id.* at 46–47. For these reasons, the defendants' request is inappropriate.

## E. Conclusion

Given the discovery provided by the government in this case, the factual and legal information provided in the indictment, and for reasons which I have already discussed, I conclude that the defendants have been provided with enough information to adequately inform them of the nature of the charges brought against them, prepare their defense, avoid surprise during the trial, and to protect them against a second prosecution for an inadequately described offense. *See Addoni-*

*zio,* 451 F.2d at 63–64. Therefore, defendants' motion for a bill of particulars is denied.

## VIII. Reciprocal Discovery

■ The government has made a motion for reciprocal discovery pursuant to Rules 16(b)(1)(A) and 16(b)(1)(B) which the defendant does not appear to oppose. FED. R.CRIM.P. 16(b)(1)(A) and (b)(1)(B). The government has indicated that it has not received anything from the defendants. Government Br. at 50. This court grants the government's motion to the extent that it seeks production of information encompassed by Federal Rule of Criminal Procedure 16(b)(1). The defendants should make available those materials he intends to introduce as evidence in chief at trial.

Additionally, the government has requested a summary of expert testimony pursuant to Rule 16(b)(1)(c) which provides:

If the defendant requests disclosure under subdivision (a)(1)(E) if this rule and the government complies, the defendant, at the government's request, must disclose to the government a written summary of testimony the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. This summary must describe the opinions of the witnesses, the bases and the reasons therefor, and the witnesses' qualifications. FED. R.CRIM.P. 16(b)(1)(C).

In particular, the government, at the hearing, the government requested a summary of the testimony of defendants' polygraph expert, Richard O. Arther. The defendants have indicated that they would like to introduce testimony related to a polygraph examination taken by the Sourlises in April 1991 concerning "the rent roll for the Amerifed loan." Defendants' Br. at 31. This court has not ruled on the admissibility of this evidence, but will do so in the future after a hearing. Nevertheless, the government expressed to the court that it has been provided with insufficient information regarding the polygraph examination.

At the hearing, the government requested, pursuant to Rule 16(b)(1)(C), that it be provided with:

- a succinct written summary of the Mr. Arther's polygraph testimony;
- the charts made during the examination;
- information regarding the methodology;
- information regarding whether an activity monitor was employed;
- a list of the control questions and directed lie questions asked;
- the amount of money paid to Mr. Arther for his services;
- information regarding what happened during the pre-test interview and the post-test interview;
- and any additional information that would put the government "at the scene as the scene unfolded."

In order to fulfill its duty under Rule 16, I find that the defendants should comply with this request by December 30, 1996.

## IX. Conclusion

For the foregoing reasons, I make the following rulings: that defendant's motion to dismiss the Indictment on duplicity grounds should be denied; that the government must disclose all *Brady—Giglio—Agurs'* material as soon as such material comes into its possession; that the government must premark its exhibits and permit the defense counsel to inspect and copy these exhibits forty-five days prior to commencement of the trial; that the government supply the defendants with Jencks Act material one week in advance of a given witness's testimony; that the defendants supply the government with all witnesses' statements pursuant to Rule 26.2 of the Federal Rules of Criminal Procedure one week in advance of a given witness's testimony; that the defendants' motion for a bill of particulars is denied; that the government's motion for reciprocal discovery is granted; and that the defendants must produce a written summary of the testimony to be given by the polygraph expert, Richard O. Arther by December 30, 1996.